UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CLENNEY, et al.,<br><br>        Plaintiffs,<br><br>       v.<br><br>FCA US LLC,<br><br>        Defendant. | Case No. 22-cv-00547-VC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

      Michael and Norma Clenney allege that they have experienced numerous technical problems relating to a 2013 Dodge Challenger they purchased from FCA in February 2014. They first brought the vehicle to a repair facility when the car had 2,800 miles on it in June 2014. The complaint mentions eight other repair trips between June 2014 and October 2019. But the Clenneys continued to experience issues, even following those nine total repair visits. They allege that the car had transmission, engine, and electrical issues, including problems relating to its Totally Integrated Power Module (TIPM).

      The Clenneys bring multiple causes of action, including for violations of California's Song-Beverly Act. Relevant here, the Clenneys bring claims for breach of implied warranty of merchantability, violation of the federal Magnuson-Moss Warranty Act, and fraudulent inducement. FCA moves to dismiss the implied warranty and Magnuson-Moss claims because it contends those claims are time-barred. FCA also moves to dismiss the fraudulent inducement claim as barred by California's economic loss rule.

      1. *Implied Warranty and Magnuson-Moss Claims*. Under California law, implied warranties extend for one year "following the sale of new consumer goods to a retail buyer." Cal.

Civil Code § 1791.1(c). Claims for breach of an implied warranty must be brought within four years of the date of the breach. *Gerstle v. American Honda Motor Company, Inc.*, 2017 WL 2797810, at *11 (N.D. Cal. June 28, 2017); *see also* Cal. Com. Code § 2725(1). The same goes for claims arising under the Magnuson-Moss Warranty Act. *See Rooney v. Sierra Pacific Windows*, 566 F.App'x 573, 576 (9th Cir. 2014). Although California's commercial code sets a four-year limit, equitable tolling doctrines still apply. *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 875 (Cal. 2013). Those include the "discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has reason to suspect, a factual basis for its elements." *Norgart v. Upjohn Co.*, 981 P.2d 79, 83 (Cal. 1999).

   A statute of limitations provides an affirmative defense; timeliness is not an element of a plaintiff's claim. Accordingly, a claim should not be dismissed on timeliness grounds in response to a motion to dismiss unless it is clear from the face of the complaint that the plaintiff could not possibly get around a time bar. FCA has not satisfied that standard. The Clenneys allege that they did not know or have reason to suspect that FCA had breached the implied warranty of merchantability until October 2019. The complaint alleges that the Clenneys "requested a buyback and/or restitution" of their Challenger at that time because the car "continued to exhibit symptoms of defects" after FCA tried (unsuccessfully) to fix persistent technical problems. But, the complaint alleges, FCA refused. Because the Clenneys assert that FCA refused to fix the ongoing issues only after their October 2019 repair visit, which would mean they did not know or have reason to suspect FCA's breach until that time, FCA cannot prevail on a statute of limitations defense at this stage.

   FCA argues that the statute of limitations began to run on February 15, 2015, the one-year anniversary of the date that the Clenneys purchased their Challenger, and the date on which the implied warranty would have expired under California law. However, the "statute of limitations for implied warranty claims does not run at tender. It runs at discovery." *Tanner v. Ford Motor Co.*, 424 F.Supp.3d 666, 671 (N.D. Cal. 2019); *see also Mexia v. Rinker Boat Co.*,

2

*Inc.*, 174 Cal.App.4th 1297, 1307–08 (Cal. Ct. App. 2009); *Yi v. BMW of North America, LLC*, 805 F.App'x 459, 461 (9th Cir. 2020) ("A breach of warranty claim accrues when the plaintiff reasonably knows or should know that breach has occurred—that is, that the defendant either will not or cannot repair an existing defect."). *But see MacDonald v. Ford Motor Co.*, 37 F.Supp.3d 1087, 1100 (N.D. Cal. 2014).

Discovery may reveal that the Clenneys had enough notice after some number of prior repair attempts such that they had an incentive to sue, thereby starting the clock on the statute of limitations. After all, the Clenneys allege that they brought their Dodge Challenger in for repair eight times prior to the October 2019 repair visit prompting this lawsuit. But absent factual discovery shedding light on what the Clenneys knew and when FCA communicated—either explicitly or implicitly—that it was unwilling to fix the issues with their car, the Court cannot dismiss the claims as time-barred. *See Norgart*, 981 P.2d at 83; *Yi*, 805 F.App'x at 461.

2. *Fraudulent Concealment*. FCA moves to dismiss the Clenneys' fraudulent concealment claim under the economic loss rule, which "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004). Where injuries are only "to the product itself," recovery "is barred by the economic loss rule." *Jimenez v. Superior Court*, 58 P.3d 450, 456 (Cal. 2002). Applying the rule in the admiralty context, the United States Supreme Court explained that without barring recovery for purely economic losses, "contract law would drown in a sea of tort." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986). "If a person wishes to be protected from economic harm, it is argued, he or she must bargain for protection and pay the price of securing those benefits." Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 547 (2009).

Scholars credit California with creating the economic loss rule. *See* R. Joseph Barton, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L. Rev. 1789, 1794 (2000) (explaining that the

"economic loss rule is a judicially created doctrine, first articulated by the California Supreme Court"); *see also Seely v. White Motor Co.*, 403 P.2d 145 (Cal. 1965). But the rule's contours have never been neatly marked: "Courts have struggled to define the rule and have assigned it different boundaries in different states, making it a frequent source of puzzlement and dread for lawyers." Ward Farnsworth, *The Economic Loss Rule*, 50 Val. U.L. Rev. 545, 545 (2016).

Today's case falls on a fault line in California law. In *Robinson Helicopter*, the California Supreme Court carved out what it described as a "narrow" exception to the economic loss rule. 102 P.3d at 276. Where a defendant makes "affirmative intentional misrepresentations of fact," they commit a tort (fraud) that is independent of the breach of a contract, and therefore the economic loss rule does not bar recovery. *Id.* at 275. But *Robinson Helicopter* does not answer the question whether fraudulent omission claims, where no "affirmative" misrepresentations are made, also count as an exception to the rule. The Ninth Circuit recently certified the question to the California Supreme Court. *Rattagan v. Uber Technologies, Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021) (certifying the question whether "claims for fraudulent concealment" are "exempted from the economic loss rule"). The California Supreme Court granted the Ninth Circuit's request for certification, and the case is currently pending. *See Rattagan v. Uber Technologies*, Case No. S272113 (Cal.).

Absent an authoritative holding from the California Supreme Court, it falls on a federal court sitting in diversity to "predict how the state's highest court would decide the question." *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019). A federal court "attempting to forecast state law must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir. 1980).

Recent California Supreme Court cases, pertinent decisions from other states, and germane scholarship all suggest that the economic loss rule does not bar fraudulent concealment claims under California law.

4

*Robinson Helicopter*'s logic provides the first clue that the Clenneys may bring a claim based on fraudulent concealment. The California Supreme Court held that the economic loss rule did not bar the plaintiff's fraud claim because it was "independent of [the defendant's] breach of contract." 102 P.3d at 274. Whether accomplished by way of omission or misrepresentation, fraudulently inducing another to enter into a contract counts as an independent tort. *Robinson Helicopter* itself found no distinction between concealment and affirmative misrepresentations in describing fraud—it explained that fraud requires proof of a misrepresentation, whether "false representation, concealment, or nondisclosure." *Id.* If all three count equally as fraud, why should the economic loss rule apply to one but not to the others?

The California Supreme Court's most recent decision on the economic loss rule offers more evidence that what matters most is the commission of an independent tort, and not the specific type of fraud. In *Sheen v. Wells Fargo Bank, N.A.*, the Court explained that "[n]ot all tort claims for monetary losses between contractual parties are barred by the economic loss rule," but that "such claims are barred when they arise from—or are not independent of—the parties' underlying contracts." 505 P.3d 625, 633 (Cal. 2022) (citing *Robinson Helicopter*, 102 P.3d at 274)). *Sheen*'s emphasis on whether the defendant has committed an independent tort renders minute differences between types of fraud beside the point.

At least some courts in other jurisdictions have concluded that the economic loss rule does not bar fraudulent concealment claims. In *Van Rees v. Unleaded Software, Inc.*, the Colorado Supreme Court addressed whether "fraud, fraudulent concealment, constructive fraud, and negligent misrepresentation" claims were barred by the economic loss rule. 373 P.3d 603, 606 (Col. 2016). Much like *Robinson* did, the Colorado Supreme Court treated those four claims "as a group," and held that the economic loss rule did not bar recovery because the tort claims were "based on misrepresentations made prior to the formation of the contracts," and therefore counted as violations of "an independent duty in tort to refrain from such conduct." *Id.* at 606 n.4, 607; *see also Alejandre v. Bull*, 153 P.3d 864, 871 (Wash. 2007) (finding a "fraudulent concealment claim . . . not precluded by" Washington's "economic loss rule"). Other courts have

5

gone in a different direction. For instance, although Michigan law recognizes an exception to the economic loss rule where the defendant commits an independent tort, the exception does not apply where "the only misrepresentation by the dishonest party concerns the quality or character of the goods sold." *Huron Tool and Engineering Co. v. Precision Consulting Services, Inc.*, 532 N.W.2d 541, 545 (Mich. 1995).

Scholarship also tends to support the view that fraudulent concealment counts as an exception to the economic loss rule. *See* Barton, *Drowning in a Sea of Contract*, 41 Wm. & Mary L. Rev. at 1837 (proposing a rule requiring that "the defendant intentionally misrepresented a material fact to induce the contract" and that "had the plaintiff known that the representation was false, the plaintiff would not have entered into the contract"); *see also* Farnsworth, *The Economic Loss Rule*, 50 Val. U. L. Rev. at 557 (explaining that the economic loss rule does not bar recovery where the defendant commits fraud).

Taken together, these various sources suggest that the California Supreme Court is likely to find that fraudulent concealment claims are not barred by the economic loss rule where the defendant's fraud induces the plaintiff to enter into a contract. The Clenneys allege just that. According to the complaint, FCA concealed from them defects relating to the TIPM. Those defects implicate critical safety features of the car, as the defect may "cause a vehicle to fail to start" or "stall, sometimes while traveling at high speeds." And, the complaint goes on, the Clenneys relied on FCA's "silence about the TIPM defect when deciding whether to purchase or lease a vehicle equipped with a TIPM." Because the Clenneys assert that FCA's silence about the car's material defects induced them to enter into a contract that they otherwise would not have agreed to, California's economic loss rule does not bar their recovery of damages.

FCA argues that *Robinson Helicopter* cabined its holding as narrow and restricted the fraud exception to the economic loss rule only to claims involving affirmative misrepresentations. That is neither here nor there. As the Ninth Circuit explained in *Rattagan*, the Court in *Robinson Helicopter* left open the question whether fraudulent concealment claims are barred by the economic loss rule. *Rattagan*, 19 F.4th at 1191 (noting that the California

Supreme Court "expressly declined to address whether another type of fraud—intentional concealment—likewise constitutes an independent tort warranting an exception"). And where a state's highest court has not definitively answered a question of state law, federal courts sitting in diversity must do their best to predict the outcome.

Even if the Clenneys' fraudulent concealment claim is viable, FCA insists that the complaint fails to plausibly allege fraud. Because the complaint references materials that were publicly available concerning the TIPM defect, FCA argues that it did not have "exclusive" knowledge, which it says is required to state a claim for fraud. But a defect need only be difficult and "not impossible . . . to discover." *Rose v. HP Inc.*, 2020 WL 7714532, at *1 (N.D. Cal. Dec. 29, 2020); *see also Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 256 (Cal. Ct. App. 2011). The Clenneys plausibly allege that FCA knew far more about the defective TIPM component than the everyday car purchaser. And even if some information about the defect may have been available through certain channels, "[m]any customers would not have performed an Internet search before beginning a car search." *Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1097 (N.D. Cal. 2007).

FCA relies principally on *Milman v. FCA U.S., LLC*, which dismissed a fraud claim for failure to plead exclusive knowledge. 2018 WL 5867481, at *11 (C.D. Cal. Aug. 30, 2018). But the plaintiff in that case alleged that "the defect was reported in a 'high volume' of media coverage." *Id.* (quoting the complaint). The Clenneys do not allege that the TIPM defect gained that kind of widespread notoriety.

FCA's motion to dismiss is denied. A further case management conference will take place on July 13, 2022, at 1:00 p.m.

**IT IS SO ORDERED.**

Dated: June 20, 2022

_____
VINCE CHHABRIA
United States District Judge